# White Construction Co. v. Louisville Title Co. et al.

(Decided Feb. 26, 1935.)

GORDON & GORDON & MOORE and ABNER JOHNSTON, Jr., for appellant.

ANDREW M. SEA, Jr., and WILLIAM J. COX for appellees.

OPINION OF THE COURT BY JUDGE REES—Reversing.

The board of council of the city of Madisonville, a city of the fourth class, adopted an ordinance on May 6, 1927, providing for the improvement, by original construction, of certain streets in the city, including West Center street. The White Construction Company was the lowest bidder, and obtained the contract for the construction of the streets. The work was completed in September, 1927, and on September 20, 1927, the work was accepted and the apportionment ordinance was adopted.

Elijah Ray owned two lots, known in this record

as lots No. 1 and No. 2, fronting on West Center street. Lot No. 1 had a frontage of 58 feet, and was unimproved, and lot No. 2 had a frontage of 55 feet, and there was a building thereon; $293.67 was assessed against lot No. 1 and $278.48 against lot No. 2. The owner of the lots agreed in writing to pay the assessments on the ten-year payment plan, thereby waiving all defenses against the payment of such taxes.

The city issued street improvement bonds which were delivered to the White Construction Company in payment for the work which it had performed under its contract.

Before the improvement was made, Elijah Ray and wife executed and delivered to the Louisville Title Company, trustee, a mortgage on lot No. 2 for the sum of $1,500 to secure an indebtedness of that amount. Ray failed to pay when due the annual installments of taxes levied against his property for the street improvement, and on October 11, 1930, the White Construction Company, the owner and holder of the bond secured by lien on the Ray property, brought this action in the Hopkins circuit court to enforce its lien against the property, and the Louisville Title Company, trustee, answered, setting up its mortgage lien on lot No. 2 and asking that it be adjudged a lien prior and superior to all others, except the lien of the White Construction Company. The White Construction Company was adjudged a prior and superior lien for the amount of its claim, and the two lots were ordered sold by the master commissioner.

The property was sold on February 21, 1931, and lot No. 1 brought $105 and lot No. 2 $531, a total of $636. The Louisville Title Company was the purchaser. The Louisville Title Company moved the court to fix the value of the property at $636, the amount it brought at the sale, and to permit the purchaser to take credit upon the amount of its sale bond in the amount of $318, and that the master commissioner be directed to indorse the sale bond "Satisfied." This was based on the theory that the owner of the street assessment bond had a lien on the lots to the extent only of one-half of their value, and that the value should be fixed as of the date of the sale. Over the objection of the Louisville Title Company, the court permitted the White Construction Company to introduce proof as to the value of the lots when the assessment was made in 1927.

Several witnesses testified on this point, and they fixed the value of lot No. 1 at $300 as of the date of the assessment and the value of lot No. 2 at from $1,200 to $1,500. The court, however, adopted the view of the Louisville Title Company that the value of the lots should be fixed as of the date of the sale, and sustained its motion, and the White Construction Company has appealed.

Section 3563 of the Kentucky Statutes reads in part:

> "Any assessment for any street improvement as provided in this section which exceeds one-half of the value of the lots or parcels of real estate upon which the assessment is made shall be void as to such excess, but the improvement shall be taken into consideration in fixing the value of such real estate and the board of council shall provide for the payment of any such excess out of the general fund."

When Elijah Ray agreed in writing to pay the assessment in ten equal annual installments, he waived all defenses, including the defense that the assessment for street improvements exceeded one-half of the value of his lots, but his signing of the waiver did not waive that defense as to the mortgagee, whose mortgage lien antedated the street improvement. When the lot owner elects to pay his apportionment on the ten-year payment plan, he does not thereby subordinate the lien of a prior mortgage to the claim of the holder of the improvement bonds to have the entire value of the lot applied to the payment of the apportionment levied against it, although that apportionment exceeds one-half the value of the lot. Stone v. City of Providence, 236 Ky. 775, 34 S. W. (2d) 244.

The sole question presented by this appeal involves the proper distribution of the proceeds of the sale of lot No. 2, which is the lot on which the Louisville Title Company, trustee, had a mortgage. It is the contention of the mortgagee that the sale fixed the value of lot No. 2 and that only one-half of the proceeds thereof can be applied to the payment of appellant's lien claim, while the appellant contends that the value of the property covered by the mortgage and street assessment liens cannot be fixed by a forced public sale made during a time of distress and depression five years

after the assessment was made, but that the time of the assessment is the time when the value of the property is to be fixed.

We conclude that appellant's contention is sound and that the court erred in adopting the sale price as the value of the property for the purpose of determining the extent of appellant's lien. It was clearly the intention of the Legislature, when it enacted section 3563 of the Statutes, that the value of the property against which the cost of street improvements is assessed should be fixed as of the date of the assessment. Any other construction of the statute would cause confusion and create uncertainty in regard to the security behind the street improvement bonds. It would also result in a lack of uniformity in fixing the value of lots in lien to secure the same issue of bonds; the respective values being dependent on when the lots are sold. Since the improvements must be taken into consideration in fixing the value of the lots subject to the street assessment lien, the value of the lots in lien to secure the payment of the bonds would fluctuate as the condition of the improvements on the lots changed. Furthermore, section 3563 requires that the board of council shall provide for the payment of any excess of the cost of the improvements over one-half of the value of the lots out of the general fund, and necessarily the extent of the city's liability must be determined at the time of the assessment in order to ascertain whether or not it is in violation of the constitutional debt limitations.

In City of Mount Sterling v. Reis, 243 Ky. 765, 49 S. W. (2d) 1029, property which was subject to a street improvement lien and a prior mortgage lien was sold under order of the court for $850, and the court ordered one-half of the sale price paid to the city to be credited on its claim for street assessments and one-half to the mortgagee. The question as to the time when the value should be fixed was not raised, and an examination of the record discloses that the parties stipulated that the value of the property was $850, both at the time the assessment was made and at the time it was sold by the master commissioner, and the judgment so recites. In the instant case, if the assessment against the property was valid when made in 1927, it was valid when the property was sold and to the same extent.

The interlocutory order adjudging the sale of the property concluded as follows:

"The proceeds of said sale of the lot upon which said lien is claimed by the Louisville Title Company shall be subject to distribution as between the claim of plaintiff and that of the Louisville Title Company as the court may hereafter adjudge. Said commissoner will report his action to the court at the present term."

Appellee argues that, since the appellant failed to object to the order, it agreed to be bound by whatever judgment the court thereafter entered with respect to the distribution of the proceeds of the sale of lot No. 2. Such, however, is not a correct interpretation of the interlocutory order. The concluding paragraph simply means that the manner in which the proceeds of the property should be distributed would be determined later, and did not foreclose appellant from objecting and excepting to the later judgment, if it deemed it erroneous. It may be said in passing that the city of Madisonville is not a party to this litigation, and, since it is made liable by section 3563 of the Statutes for any assessment in excess of one-half of the value of the lot upon which the assessment is made, the adjudication of the rights of the parties to this action will not be res adjudicata as to it.

The judgment is reversed, with directions to enter a judgment in conformity with this opinion.